IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

GARLAND LOTT, JR                                                                  PLAINTIFF

V.                          CASE NO.: 2:13CV00036 BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                    DEFENDANT

## ORDER AFFIRMING COMMISSIONER

Garland Lott, Jr. sought judicial review of the denial of his applications for disability insurance benefits and supplemental security income.  In his April, 2010 applications, Mr. Lott alleged that he became disabled on January 16, 2010, due to diabetes, hypertension, and a mental disorder.  (SSA record at 115-20)

Mr. Lott was 36 years old at the time of his February 2, 2012 hearing.  (*Id*. at 31) He had completed the 10th grade in some special education classes and lived with his wife.  (*Id*.)  Mr. Lott worked 36 hours per week after filing his applications, from February until December 24, 2011, as a cook in a truck stop and was fired because he wasn't following policies.[1]  (*Id*. at 33-35)

---

[1] Mr. Lott worked at the same job in 2009, but testified that he quit because of his diabetes.  (*Id*. at 37)  The ALJ asked Mr. Lott about $5,281 in reported earnings in 2010, but he testified that he did not know what job that was.  (*Id*. at 36)

1

**The Commissioner's Decision**

After holding a hearing, an administrative law judge ("ALJ") denied Mr. Lott's claims. The Commissioner's ALJ determined that Mr. Lott had severe impairments–diabetes, without complication; obesity; mild mental retardation; and an unspecified psychotic disorder. (*Id*. at 15) The ALJ also found, however, that Mr. Lott had the residual functional capacity ("RFC") to perform light work. The ALJ found that Mr. Lott could sit, stand and/or walk for up to six hours out of an eight-hour workday; lift/carry up to twenty pounds occasionally and ten pounds frequently; occasionally bend, stoop, and crouch; understand, carry out, and remember simple (not complex or detailed) instructions; use judgment to make simple, work-related decisions with few variables; interact with supervisors and co-workers on an occasional basis with no interaction with the general public; and he could climb or balance. (*Id*. at 17) Because the vocational expert testified that there were jobs available that a person with Mr. Lott's RFC could perform, the ALJ concluded that Mr. Lott was not disabled under the Social Security Act and denied the applications. (*Id*. at 20-21)

After the Commissioner's Appeals Council denied Mr. Lott's request for review, the ALJ's February 24, 2012 decision became a final decision for judicial review. (*Id*. at 1-6) Mr. Lott appealed. (Docket entry #2) In reviewing the decision, the court must

determine whether substantial evidence supported the decision and whether the ALJ made a legal error.[2]

**Social Security Listing 12.05**

Mr. Lott claims the ALJ erred by finding he did not meet listing 12.05C for mental retardation at step three of the sequential evaluation process.  Mental retardation, as defined by Social Security Listing 12.05, refers to "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05.  The required level of severity for this disorder is met when the requirements in paragraphs A, B, C, or D are satisfied.

Under Listing 12.05C, a claimant suffers from the required severity of mental retardation if he shows "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

---

[2]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

Listing 12.05C requires a claimant to show three elements: (1) a valid verbal, performance, or full scale IQ score of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

Here, the record does not contain the results of any IQ testing for Mr. Lott, which is necessary for a finding that he meets listing 12.05C. Mr. Lott complains that because Stephen P. Nichols, Ph.D., who performed a consultative mental examination of Mr. Lott, concluded that he suffered from mild mental retardation, the ALJ should have sent Mr. Lott to a consultative examiner for IQ testing to determine whether he meets the requirements for disability under the listing. (#11 at pp. 11-12) This argument lacks merit.

First, it is unclear how IQ testing of Mr. Lott at age thirty-six could substantiate that he had the onset of mental retardation before age 22, which is also a requirement of the listing. If IQ testing of Mr. Lott was performed at an earlier age, Mr. Lott had ample opportunity to discover the results of the testing and submit the test results or relevant school records to the ALJ in his case. Mr. Lott's testimony that he participated in special education classes in two subjects (math and science) does not establish, in an of itself, the criteria required by the listing.

Second, an ALJ is required to order additional medical examinations and tests only if the medical records presented do not give sufficient medical evidence to determine disability. *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006). Here, there was sufficient evidence from which the ALJ could determine whether Mr. Lott was disabled. The ALJ reviewed Dr. Nichols's report in detail. He noted that Mr. Lott had reported violent behavior and an inability to control himself in his youth. (*Id*. at 18) Dr. Nichols reported that Mr. Lott gave minimal effort to cooperate during the examination. (*Id*.) He assessed Mr. Lott was exaggerating symptoms, but he did not think he was malingering. (*Id*.) The ALJ accepted Dr. Nichols's diagnosis of mild mental retardation. (*Id*.)

The ALJ also relied on the report of Jay Rankin, M.D., a state agency physician. (*Id*. at 18) Dr. Rankin acknowledged Dr. Nichols's report but found that Mr. Lott's allegations of auditory and visual hallucination were inconsistent with the medical record and that his reported daily activities suggested he was capable of performing unskilled work. (*Id*.)

The ALJ also considered other evidence in the record. On both his function report and at the hearing, Mr. Lott attributed his disability primarily to various physical problems. (*Id*. at 39-41, 175-82) He had not sought any recent psychiatric treatment. (*Id*. at 18-19, 230-32, 293, 320, 322) The ALJ also pointed out that Mr. Lott's work history, including his work after filing for disability benefits, suggested that Mr. Lott's

5

mental impairment would not prevent him from working. (*Id*. at 15, 18-19, 34-35, 149-50)

Substantial evidence supports the ALJ's finding that Mr. Lott's mild mental retardation did not meet listing 12.05C.

**Step Five**

Mr. Lott contends that because the ALJ limited him to simple (but not detailed or complex) instructions, he would not be able to perform the jobs of marker (DOT 209.587-034) or silver wrapper (DOT 318.687-018), jobs that the vocational expert ("VE") identified, because both jobs have a reasoning level of 2 in the *Dictionary of Occupational Titles* ("DOT"). (#11 at p. 17)  The DOT defines level 2 reasoning as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles* 209.587-034, 318.687-018.  In the hypothetical posed to the VE, the ALJ did not limit Mr. Lott to "simple" job instructions or to "simple one- or two-step instructions" or otherwise indicate that Mr. Lott could perform only occupations at a DOT Level 1 reasoning level.  He did, however, limit Mr. Lott to jobs that require carrying out simple, but not complex or detailed, instructions. (*Id*. at 45)  The level 2 reasoning definition refers to "detailed but uninvolved " instructions.  DOT at 209.587-034, 318.687-018.

The Eighth Circuit has stated that "there is no direct conflict between 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' as in the

hypothetical, and the vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate." *Moore v. Astrue*, 623 F.3d 599, 604-05 (8th Cir. 2010). Further, the definition of level 2 reasoning found in the DOT is an upper limit across all jobs in the occupational category, not a requirement of every job within the category. *Id*. There is nothing in the record to suggest that the vocational expert ignored the reasoning limitations in the hypothetical in determining that the occupations of marker and silver wrapper encompassed suitable jobs. *Id*. (citing *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir. 1991)).

Substantial evidence supports the ALJ's determination at step five of the sequential evaluation process. *Id*.

**Conclusion**

Substantial evidence supports the ALJ's decision denying Mr. Lott's applications. The ALJ made no legal error. For these reasons, Mr. Lott's request for relief (docket entry # 2) is DENIED, and the decision denying the applications for benefits is AFFIRMED.

DATED this 21st day of February, 2014.

_____
UNITED STATES MAGISTRATE JUDGE